Merrell, J.
The circumstances under which the Rudolph Bank acquired the note in question were, to say the least, such as to invite inquiry. The letter from Harding to the cashier of the Rudolph Bank, requesting the latter to purchase the note and hold it for thirty days, instantly suggests to the reader that it is the Harding of the Anchor Company, the maker of the note, that is asking an accommodation, and not the Harding, cashier of the First National Bank, seeking a re-discount on behalf of the latter.
In point of-fact the evidence discloses that the note was never entered or carried on the books of the First National as the property of that bank. This fact, of course, might have been ascertained at any .time by a slight investigation on the part of the Rudolph Bank. Without such investigation, however, it may fairly be queried if the truth of the situation was not substantially disclosed by *221 Harding’s letter forwarding the note, then almost a year past due, to the Rudolph Bank.
If by that letter, and in view of the other circumstances, obvious to casual observation, the Rudolph Bank was charged with notice of the real facts, that bank can hardly be said to occupy the position of an innocent holder in due course.
It is true that the First National Bank' was chargeable with the acts of its cashier, and also with the knowledge possessed by him with reference to matters as to 'which he dealt for the bank within the scope of his apparent authority.
If, however, as the facts appears to have been, Harding’s endorsement in the name of his bank was in truth a-mere accommodation endorsement, and that fact was one that should have been gathered by the Rudolph Bank from the correspondence in its hands, it cannot be said that Flarding’s act was one within the apparent scope of his authority. In West St. Louis Savings Bank v. Shawnee County Bank, 95 U. S., 557, it is declared in the syllabus that “The cashier of a bank is not, by reason of his official position, presumed to have the power to bind it as an accommodation endorser on his individual note.”
In that case the purchasing bank was charged with notice by the form of the note itself. In the case at bar the notice if not express is at least the result of unavoidable inference from the letter with which the note was transmitted. In this letter, Harding, whether he wrote as a member of the Anchor Oil & Gas Company or as cashier of the First National Bank, or in both capacities, declared *222 that his bank could not carry the note, since to do so “would overloan some [of] the interested parties.” This would seem a clear intimation of the actual fact, namely, that the First National Bank was not “carrying” the note, had not paid value for it, and that the indorsement in the name of that bank was merely for the purpose of transferring title, and at most an endorsement for the accommodation of the maker. In this connection it should be observed that.the draft, by honoring which the Rudolph Bank paid for the note, was one drawn upon it not by the First National Bank but by the maker of the note, The Anchor Oil & Gas Company.
A situation in many respects parallel to the present is presented in Harrington v. Baker, 173 Mass., 488. In that case a promissory note signed by A, payable to B, and indorsed by B, individually, and also in the name of a firm of which he was a member, was sent to a bank enclosed in a letter signed by him, stating that “we have good captains in our employ who we frequently assist, and the enclosed I offer you I do not hesitate to say is a strong one for the reason our concern, B & Co., do not have any notes out of any nature.” It was held that by this letter the bank discounting the note had notice that the endorsement by B & Co. was for the accommodation of B, and the petition of the bank seeking to prove the note against the estate of B & Co. was dismissed.
Another case that throws light upon the present controversy is that of Fort Dearborn Natl. Bank of Chicago v. Seymour, 71 Minn., 81, the out *223 standing facts of which are as follows: A bank in St. Paul was the correspondent of a bank in Chicago, in which it kept funds on deposit. The cashier of the St. Paul bank, who was secretary of a land company, wrote in his individual name to the cashier of the Chicago bank that he had been unexpectedly called on to take up $25,000 for a company in which he was interested, that he did not want to borrow the money from his own bank, and he asked if the Chicago bank would place an enclosed note to the account of the St. Paul bank.
The cashier of the Chicago bank consented on condition that his bank might at its option charge the note to the St. Paul bank. On these terms the Chicago bank discounted the land company’s note ^and placed the proceeds to the credit of the St. Paul bank, which in turn paid the amount to the land company.
It was held that the agreement of the cashier of the St. Paul bank was wholly without the scope of his authority, that his conduct was in law and fact a fraud on the St. Paul bank, of all of which the Chicago bank was chargeable with notice. The facts of the case differ from those of the instant case only in that the cashier of the St. Paul bank sought to bind his bank by agreeing in its name to a contract of guaranty with respect to the note in question, whereas in the present case Harding attempted the same result by endorsing the note itself in the name of his own bank. The rights of the holder, affected with notice in both cases, are no better iri one case than in the other.
*224 Plaintiff in error, however, relies with much confidence on the case of Hanover Natl. Bank v. First Natl. Bank, 109 Fed. Rep., 421, wherein the president of the First National Bank discounted with the Hanover Bank a note payable to him and by him indorsed. The note having been dishonored, the Hanover Bank charged the same to the First National Bank in pursuance of an agreement to that effect made with it by the president of the First National Bank, ostensibly on behalf of that bank. A majority of the court held that the First National Bank was bound by the contract of its president, though in fact unauthorized. This conclusion, however, was based upon a finding of fact that the First National Bank had received and kept the proceeds of the note discounted by its president. The case is therefore to be distinguished from the case at bar, wherein it affirmatively appears that the First National Bank of Bowling Green received none of the proceeds of the discount, or, if it did receive them at all, at once passed the amount to the credit of the maker of the note, The Anchor Oil & Gas Company.
The true parallel to the instant case is to be found in the facts appearing at the first trial of the Hanover Bank case, 66 Fed. Rep., 34, where the same court unanimously held that the First National Bank not having retained or enjoyed the proceeds of the discount was not estopped to question the authority of its officer to charge it with liability for the note.
For the reasons indicated in the foregoing discussion the judgment below must be affirmed, and *225 it becomes unnecessary to consider other grounds advanced in support thereof, namely, that the Rudolph Bank acted at its peril in dealing with an agent who professed a dual capacity and that the obligation of the First National Bank as endorser was discharged by the failure of the Rudolph Bank to present the note for payment to the maker within a reasonable time.
Judgment affirmed.
Matthias, Johnson and Robinson, JJ., concur.
Jones, J., concurs in the judgment.